154 Cal.App.2d 487 (1957)
MONOLITH PORTLAND CEMENT COMPANY (a Corporation), Respondent,
v.
MOJAVE PUBLIC UTILITIES DISTRICT, Appellant.
Civ. No. 5400. 
California Court of Appeals. Fourth Dist. 
Oct. 17, 1957.
 Baker, Palmer, Wall & Raymond for Appellant.
 Conron, Heard & James and Enright & Elliott for Respondent.
 GRIFFIN, J.
 Plaintiff and respondent Monolith Portland Cement Company, a corporation (hereinafter referred to as Cement Company), alleged in its complaint that it owned portions of section 28 and other sections of certain described real property in Township 32 South Range 34 East M. D. B. & M., and that defendant and appellant Mojave Public Utilities District (hereinafter referred to as the District), owned an adjoining 40 acres in the southwest quarter of the southeast quarter of said section 28, in said township, and alleged that all of the described property overlies an enclosed basin of confined water which is surrounded by mountains which constitute the drainage area that supplies the ground water in said basin; that said basin is oblong in shape and at its westerly (later corrected to read easterly) end the surrounding mountains come to a point at which there is a gap or a canyon through which flood waters escape only during times of heavy rains; that across said gap or canyon there is a dike and earth strata which impound the waters in said basin; that plaintiff, in 1920, acquired a cement plant and the waters *489 underlying its property and installed upward of $20,000,000 in equipment; that about January 1, 1947, defendant District drilled a well upon its 40 acres, produced water and used it to irrigate said land; that in September, 1950, it constructed an 8-inch pipe line from said well to transport water therefrom outside said basin to the town of Mojave a distance of about 11 miles; and that at all times plaintiff protested this action. It then alleged said defendant had another supply of water and that there was no surplus in this basin. A permanent injunction restraining defendant from diverting ground water from wells in this basin was sought, together with damages for such diversion. By agreement no further pleadings were filed until April, 1955. By an amended and supplemental complaint filed April 26, 1955, it was additionally alleged that defendant subsequently drilled another well on said 40 acres for the same purpose. A temporary restraining order was granted.
 By answer the District denied generally the allegations of the complaint and admitted it had been using the water from well Number 1 since November, 1950, to supply the inhabitants at Mojave and the United States Navy at its marine base there, as well as the Southern Pacific Company, which company had previously installed pipe lines from its wells in that district to conduct water to Mojave for its purposes. The District claimed it was the sole owner of its water supply. Trial was had in 1956.
 The reporter's transcript consists of about 3,000 pages and it indicates a full and fair consideration of the issues presented. The court orally announced the issuance of an injunction against defendant from exporting water from these wells in the Tehachapi Basin so long as the present overdraft exists. It found there was no surplus water available for appropriation, and retained jurisdiction of the case to "interpret, modify and enforce its decree."
 In his memorandum opinion filed June 14, 1956, the judge recited generally the facts alleged in the pleadings and stated the significance of the "geological history of the Tehachapi and related areas goes only to the assistance it may afford the court in determining the present facts of geology and hydrology in the particular area under scrutiny."
 Suffice it to say the evidence fully establishes the fact that the wells mentioned and involved in the pleadings were within the so-called Tehachapi Basin. The main question arises over the description pertaining to the easterly boundary of said *490 Tehachapi Basin. Apparently, where the water escapes eastward through the Monroe Meadows is what is known as Proctor Gap. Monroe Meadows, consisting of the formation there described, then continues eastward to a point known as Tehachapi Pass. Cache Creek comes from the north and drains partially into the Tehachapi Basin and partially into the Monroe Meadows thus described.
 The judge, in his memorandum opinion, stated that:
 "The Tehachapi Valley contains an enclosed basin of confined underground water, referred to throughout the trial as the Tehachapi Basin. ... The degree of confinement of water in the Basin is nearly total; perhaps one or two per cent of water once confined in the Basin escapes eastward through Monroe Meadows, and this escape is in the nature of a seepage, rather than as a definable underground stream. Escape of any greater amount of water to the east is prevented by the throttling effect of the clay and other deposits, impervious or nearly so, existing in the earth in increasing frequency and density from the vicinity of Eric southeastward, and by the rock walls and bed of Tehachapi Gorge. ..."
 "Of the uncertain trickle of water reaching Tehachapi Pass east of the Meadows, some portion originates from the east branch of Cache Creek, and has never been confined in the Tehachapi Basin; a portion is from the seepage above referred to, and a portion is from Cameron Creek (emanating from the south) and other local topographic features of the Gorge and Pass."
 "The 'sub-basin,' so called, of Cache Creek, is in fact no basin at all, but a minor watershed and drainage system having sufficient slope to deliver water from its catch of rain into the Tehachapi Basin west of the Knolls, or into the Meadows, to whatever extent the flow is to the east of the Knolls. If the term 'sub-basin' is actually germane to the discussion, then the Cache Creek area is a sub-basin of the Tehachapi Basin only to the extent, not precisely determinable, that Cache Creek waters supply Tehachapi Basin."
 It is apparent from this opinion that the trial court did not intend to describe the east boundary of the Tehachapi Basin for the purpose of including within that description a well or wells of said District located and drilled in the Cache Creek north of the Knoll in section 27 of said township or wells formerly drilled in the area of the so-called Monroe Meadows so as to operate as res judicata in any subsequent action *491 brought by plaintiff company against said district to determine that question. In approving the judgment this exception should be noted.
 The confusion exists because of the description of the easterly boundary of the Tehachapi Basin as used in the signed findings and the judgment. It appears that the main issue presented to the trial court in the instant action is whether the wells located on the 40-acre tract were in the Tehachapi Basin and whether there was surplus water therein at the time.
 The findings describe the easterly boundary of the Tehachapi Basin as being at a point where the slopes of the Sierra Nevadas and the Tehachapis come to a point about 350 feet apart in the southeast quarter of section 34 (Tehachapi Pass) resulting in a hydrological dike. This description might indicate that the Monroe Meadows area was included in said basin and would involve the so-called Southern Pacific wells. In these findings an attempt is made to define the canyon underlying the Monroe Meadows to the so-called granite knoll, and they state that the southerly side of this knoll is 700 feet distant from the granite Tehachapis lying immediately to the south and that only about 1 to 2 per cent of the water escapes eastward from Monroe Meadows and that the escape of any greater amount is prevented by the throttling effect of the clay and other deposits in Monroe Meadows and by "the rock walls and bed of Tehachapi Pass." The court particularly found that the Cache Creek area referred to in the evidence as a "sub-basin" is in fact no basin at all since it does not retain the water which falls in the area; that it is a minor watershed and drainage system tributary to both the Tehachapi Basin area and to the Meadows and gorge areas. It will be noted the court here differentiates the Tehachapi Basin area and the Meadows area and rather conclusively holds that any wells located north on the Cache Creek are not included in the Tehachapi Basin, and he did not intend to determine that question. The conclusions of law then attempt to redescribe said Tehachapi Basin as an oval shaped basin bounded at the "easterly end by the clays of a (Monroe) meadow" located in the northwest quarter of section 34 which impounds the seepage of water escaping eastward through Proctor Gap from the Tehachapi Basin proper; that the basin is further bounded on the east by a granite knoll lying north of Proctor Gap in section 28 and by the northward thrust of the foothills of the Tehachapi Range extending to a point approximately 700 feet south of the knoll described. The judgment contained a *492 similar description of the basin. It fairly well appears from the description there used that the easterly portion of the Tehachapi Basin did not extend beyond Proctor Gap to the Tehachapi Pass as might be indicated in the findings, and therefore would not affect a determination of the District's rights in the Monroe Meadows area or the Cache Creek area.
 A motion for new trial was made. The question of the description of the east boundary of the Tehachapi Basin, as defined in the findings, was brought to the attention of the court. It was also claimed that in this action the court erroneously disallowed evidence indicating that a public use had attached to the water being taken by the defendant for the use of the inhabitants of Mojave since 1875 when the waters were first taken from Monroe Meadows. The court rejected this evidence which might well infer that no claimed rights of the District to the water from Monroe Meadows were in issue in the present action. The motion for new trial was denied on September 26, 1956, and a notice of appeal was filed. On November 28, 1956, the District and its directors were cited for contempt for continuing to take water from the wells in the 40-acre tract. In 4 Civil Number 5398, the District petitioned this court for a writ of supersedeas to stay execution of the judgment pending appeal. It was denied.
 Apparently, in the contempt proceeding, which was heard some nine months after the close of evidence, the record of which was lodged with this court in aid of the interpretation of the findings and decree, and after the District had ceased transporting water from the 40-acre tract, petitioners endeavored to hold the District in contempt for transporting water to Mojave from its Powell well Number S-26 located in section 27 on the Cache Creek. The judge stated he did not see any relevancy of testimony relating to this well and he did not intend to try that issue. In response to the contention that by the description he used in describing the Tehachapi Basin, the Powell well and the Southern Pacific wells were east of that basin, he said: "If water escapes from the basin southeastward through the gap south of the Knolls, it is no longer in the basin." He then reread his memorandum opinion above mentioned describing the easterly boundary of said basin and stated that if the court's language so used was not "artistically transferred into the findings or decree, why, we may have to change it ... we can't try that action at the present time." *493
 Some confusion arose in the mind of the judge as to the location of well S-26 but he finally denied relief to petitioner Cement Company in reference to that well, suspended the fine imposed against the District for taking water from the 40-acre tract conditioned that no further water be transported therefrom. He then stated that the Cement Company and the District could litigate again as to any well other than the wells on the 40-acre tract; that a new and independent action had been filed by the Cement Company attempting to seek a restraining order respecting well S-26, testing the question whether it was in the Tehachapi Basin and whether the defense of previous public use was available.
 [1] From the record before us it well appears that the wells located on the 40-acre tract in section 28 were well within the so-called Tehachapi Basin under any description used by the trial judge and that water was being exported therefrom to Mojave by the District in violation of the rights of plaintiff Cement Company and other overlying owners. Accordingly, the injunction issued was proper. (City of Pasadena v. City of Alhambra, 33 Cal.2d 908 [207 P.2d 17]; Orchard v. Cecil F. White Ranches, Inc., 97 Cal.App.2d 35 [217 P.2d 143]; City of San Bernardino v. City of Riverside, 186 Cal. 7 [198 P. 784]; Katz v. Walkinshaw, 141 Cal. 116 [70 P. 663, 74 P. 766, 99 Am.St.Rep. 35].)
 A minute and detailed description of the easterly boundary of the basin, insofar as it affected well S-26 or the Monroe Meadow wells, was therefore unnecessary to the decision. There does appear to be some ambiguity or dissimilarity in respect to it. [2] The description given in the findings, conclusions and judgment should not be considered as res judicata in another action or actions involving other wells in the Cache Creek or Monroe Meadows area, particularly where other defenses are available to the District respecting those wells, which defenses were not heard or determined in this action. The request that this court, on appeal, fix and determine by a finding the said easterly boundary of said Tehachapi Basin is not only unauthorized but impracticable.
 [3] Certain other errors are claimed on this appeal: (1) That no great or irreparable injury to plaintiff was proved by the evidence. There were volumes of evidence that this basin was lowered to the detriment of plaintiff Cement Company and the farmers who had drilled wells in the overlying basin. There was no excess of water for exportation, and these farmers were compelled to lower the pipes in their wells *494 to obtain water for irrigation. (2) That the court failed to fix a basis by which defendants could determine that in the future a surplus might exist in the basin to which the District might be entitled under the decision in Carlsbad Mutual Water Co. v. San Luis Rey Dev. Co., 78 Cal.App.2d 900 [178 P.2d 844]; Tulare Irr. Dist. v. Lindsay-Strathmore Irr. Dist., 3 Cal.2d 489, 524 [45 P.2d 972]; and California Constitution, article XIV, section 3, adopted November 6, 1928.
 [4] The court specially found that at the present time there was no surplus of water available for exportation for use on nonoverlying lands, and it retained jurisdiction for the sole purpose of determining whether or not at some time in the future, surplus water may be available for such purpose. The evidence is overwhelming that at the time of the trial there was no surplus water available for exportation purposes. This was not an action in quiet title to have the court determine the respective rights of the parties. Accordingly, there was no necessity for a definite division of surplus water or a determination of the District's rights therein. Assuming the District can show, in the future, that a surplus does exist for exportation purposes, which burden of proof falls on the District, it has a proper forum open to it to seek an adjudication of this fact and a determination of the amount of surplus, if any, to which it may be entitled. (Katz v. Walkinshaw, supra; Allen v. California Water & Tel. Co., 29 Cal.2d 466 [176 P.2d 8]; Miller v. Bay Cities Water Co., 157 Cal. 256 [107 P. 115, 27 L.R.A.N.S. 772]; Peabody v. City of Vallejo, 2 Cal.2d 351 [40 P.2d 486]; City of Pasadena v. City of Alhambra, supra, p. 935.)
 The judgment, with the exception noted, is affirmed.
 Barnard, P. J., and Mussell, J., concurred.