[Civ. No. 1060. Fifth Dist. Feb. 24, 1970.]

MONOLITH PORTLAND CEMENT COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
MOJAVE PUBLIC UTILITY DISTRICT, Defendant, Cross-complainant
and Respondent.

## COUNSEL

Conron, Heard & James, Enright, Elliott & Betz and Norman Elliott for Plaintiff, Cross-defendant and Appellant.

Palmer, Anderson & Stronge, Oran W. Palmer and William A. Anderson for Defendant and Respondent.

## OPINION

**STONE, P. J.**—This action involves water rights in a rather small watershed which drains into Cache Creek. The surface flow of the creek is insignificant and presents no issue here. On the other hand, underground drainage is of some moment, and the key to the case lies in migration of water beneath the surface.

Cache Creek flows southerly down a ravine into Tehachapi Valley which, in this area of Kern County, lies generally east and west. At the point of juncture the surface of the valley narrows to a gap formed by an outcropping on each side, of impervious materials, designated "the Knolls." At the surface, the gap is also the high point between Tehachapi Valley and Monroe Meadows, with surface waters, when there are any, flowing partly west into the Tehachapi area and partly southeast into the Mojave or Monroe Meadows area.

Underground there are two water basins, Tehachapi Basin on the west side of the gap, in which appellant has established water rights, and Monroe Meadows Basin southeasterly of the gap, in which respondent has water rights.

We are concerned with the flow, or migration, of underground Cache Creek water when it reaches the gap. The record reflects that approximately 30 feet below the surface an impervious formation, referred to as the whitnet barrier, seriously impedes, if it does not prevent, the percolation of water westward into Tehachapi Basin. In short, the first 30 feet of soil, from the

top of the ground down to the top of the barrier, is porous and an aquifer, so that when the underground water level is less than 30 feet from the surface, part of the Cache Creek underground flow percolates into Tehachapi Basin to the west of the gap and the remainder migrates southeasterly into Monroe Meadows Basin.

The water level at all times pertinent to this action has been lower than 30 feet at the barrier, so that no underground water has flowed into Tehachapi Basin since respondent commenced pumping from its well in Monroe Meadows Basin. The crux of the case is whether respondent's pumping has drawn the water level at the gap below 30 feet, that is, below the barrier, thereby depriving appellant of the natural flow of water to which it is entitled.

Monolith, in two prior actions, successfully enjoined the District from pumping water in areas that interfered with its water supply in Tehachapi Basin. The present action was instituted by Monolith to enjoin the District from pumping from Monroe Meadows Basin south and east of the pumping sites involved in the two prior actions, alleging that such pumping also interferes with the underground flow of water into Tehachapi Basin. The District cross-complained, claiming all the waters of the Monroe Meadows Basin and the entire flow of the Cache Creek watershed. The trial court denied Monolith the injunction sought in the complaint and, predicated upon the cross-complaint, entered a judgment providing in part:

"A. That cross-complainant and defendant, Mojave Public Utility District does have the exclusive right (except as may be limited by the agreement between Mary E. Monroe and Southern Pacific Railroad Company made March 12, 1921), to develop, produce and use all ground waters within Monroe Meadows Hydrologic Basin.

"B. That plaintiff and cross-defendant has no interest in and to said waters or the right to interfere directly or indirectly in the development thereof or the production and exportation of such water from Monroe Meadows to the town of Mojave and other parts of the District.

"C. That plaintiff and cross-defendant, Monolith Portland Cement Company, has no right directly or indirectly to produce water in the Cache Creek water shed and drainage area north of Monroe Meadows for use on any lands other than those lands within the Cache Creek water shed and drainage area to the east of Tehachapi Hydrologic Basin and north of Monroe Meadows."

Appellant contends the judgment should have been couched in terms of a classic underground water basin action, by which water would be allocated

on a mathematical basis according to the rights of claimants, to be reviewed at certain intervals for revision according to changes, if any, in the amount of available water. However, the case was not tried as an action to determine the respective entitlements of all owners of water rights in the Monroe Meadows Basin, even though the cross-complaint purported to be such an action on its face. The case evolved as an action between appellant Monolith and respondent District presenting two primary issues, first, whether Tehachapi Basin, in which appellant has established water rights, extends east of the gap into Cache Creek drainage area and, second, whether respondent's pumping from the Monroe Meadows Basin interferes with the Cache Creek drainage flow into Tehachapi Basin.

Appellant contends its right to pump on the east side of the barrier was established by two prior actions which are res judicata. The first case was an injunction action brought by Monolith to prevent the District from pumping out of the Tehachapi Basin. The judgment was appealed and, according to the appellate court opinion, the trial court in its finding attempted to describe the eastern boundary of Tehachapi Basin, a description that not only was ambiguous but "unnecessary to the decision." Apparently the description would have extended the easterly boundary considerably east of the gap and the whitnet barrier. The exact words used by the reviewing court in *Monolith Portland Cement Co.* v. *Mojave Public Utilities Dist.,* 154 Cal.App.2d 487 [316 P.2d 713], are: "A minute and detailed description of the easterly boundary of the basin, insofar as it affected well S-26 or the Monroe Meadow wells, was therefore unnecessary to the decision. There does appear to be some ambiguity or dissimilarity in respect to it. *The description given in the findings, conclusions and judgment should not be considered as res judicata in another action or actions involving other wells in the Cache Creek or Monroe Meadows area,* particularly where other defenses are available to the District respecting those wells, which defenses were not heard or determined in this action. The request that this court, on appeal, fix and determine by a finding the said easterly boundary of said Tehachapi Basin is not only unauthorized but impracticable." (P. 493. Italics added.)

The opinion concluded: "The judgment, with the exception noted, is affirmed." (P. 494.)

The appellate court said in plain language that the trial court judgment is not res judicata as to the boundaries of Tehachapi Basin. Appellant argues that nevertheless, because the judgment was not reversed outright, the trial court finding as to the eastern boundary of Tehachapi Basin is res judicata. Not only is the argument untenable, but to make it is to grasp at straws.

Appellants' other res judicata basis for contending that Tehachapi Basin extends beyond the barrier into the Cache Creek underground watercourse, rests upon findings in a prior case which was not appealed. In that case Monolith sued to enjoin the District from producing water from its Powell wells located in the Cache Creek drainage bed north of the gap or barrier. The trial court found "that from 1.3 times as much to 3 times as much of such water flows into said Tehachapi Basin than into said Monroe Meadows." At the time of said prior trial, the District announced that it had abandoned the Powell wells and offered to stipulate to the issuance of an injunction. Monolith counsel refused the stipulation, and insisted upon putting on a prima facie case. The following colloquy, read into the record in this case, was had at that time:

"MR. CONRON: (Monolith's counsel) Do you have any objection to our putting on a prima facie case and taking an injunction. It isn't going to hurt you if you are not going to operate in that area any more. We definitely, Mr. Palmer, *was* some concern on the phone as to what effect it would have on the district's right down in Monroe Meadows and the way I look at it, it has absolutely no bearing on Monroe Meadows. They are not involved in the issue.

"MR. WALL: (Mojave's counsel) Not at all.

"MR. CONRON: Our version of your rights in Monroe Meadows is that you have acquired the SP rights for that, you have a prescriptive right to whatever they had since 1875, or about then.

"MR. WALL: About that date, I guess.

"MR. CONRON: But this action in no way *effects* or concerns the Monroe Meadows situation. It is not involved in the pleadings.

"MR. WALL: That is correct.

"MR. CONRON: And has no bearing on them.

" . . . . . . . . . . . . . . . . .

"THE COURT: How far down the east side of those knolls does this stipulation extend?

"MR. WALL: Just for the subject of the lawsuit, the Powell wells.

"MR. ENRIGHT: (Monolith's co-counsel) That is identified in the complaint.

" . . . . . . . . . . . . . . . . .

"THE COURT: I would suppose you would want your findings and

judgment when it finally is issued to say how far down the east side of those buttes the judgment goes.

"MR. WALL: Well, when the judgment enjoins us from the Powell wells, it says how far it goes."

It seems clear that court and counsel understood that the only issue was the District's right to pump and export water from the Powell wells, and that there was no question concerning the amount of water flowing past the barrier into Tehachapi Basin, as contrasted with the amount flowing southeasterly into Monroe Meadows Basin. Since the only question was whether the District had a right to pump in the area of the Powell wells, a right it conceded it did not have, the amount of water flowing into either basin was not an issue and that question was not litigated in the case.

The principle which guides us, here, is found in an early water appropriation case, *Miller & Lux, Inc.* v. *James,* 180 Cal. 38 [179 P. 174], where the Supreme Court, in articulating the doctrine of res judicata, said, at pages 44-45: "The rule of *res adjudicata* is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy, but where they expressly agreed to withdraw an issue from the court, the reason for the rule ceases. The issue is not in fact adjudged, and the parties themselves having consented to that method of trial are not entitled to invoke the rule which requires parties to submit their whole case to the court. If they consent to adjudicate their differences piecemeal, there is no reason that the court should extend the rules of law to prevent that which they had expressly agreed might be done. . . . If it is true that where an issue is withdrawn by mutual consent from the consideration of a court in the trial of a case that the decision is not *res adjudicata* as to that issue between the parties because of that consent, then the provisions in the stipulation wherein the defendants reserved the right to *claim* that the decision is *res adjudicata* do not have the effect of reestablishing the case as one in which plaintiff has either failed to allege, or, having alleged, has failed to prove some issue which under the principles of *res adjudicata* should have been submitted to the court for its decision in that case. If the consent gave a right to withdraw an issue, and if a withdrawal by consent *ipso facto* defeats a claim that the issue is *res adjudicata,* the reservation of a *right to claim* that the fact is otherwise amounts to nothing."

Since the flow of water from Cache Creek into the two basins was never litigated by the parties, the judgment insofar as it relates to such non-issue is not res judicata. We conclude, therefore, that, here, the trial judge properly viewed the question of the flow of water in the Cache Creek watershed to be before the court for decision de novo. Even though the doctrine

of res judicata as to the flow of Cache Creek were available to appellant, under the facts of this case which we discuss hereinafter an injunction will not lie.

■ Appellant's basic contention is that respondent's pumping in Monroe Meadows Basin has lowered the water level in Cache Creek watershed to the extent that it interferes with the natural flow of underground water into Tehachapi Basin. Because of this alleged interference with the flow beneath Cache Creek drainage area, appellant not only seeks an injunction but demands the right to install pumps of its own on the Monroe Meadows side of the whitnet barrier to capture its entitlement to the natural flow into Tehachapi Basin lost by reason of respondent's pumping.

There is evidence, which the trial court apparently believed correct, that respondent's pumping has not lowered the level of the underground flow at the barrier. The water expert upon whom respondent relied and whose testimony the court apparently accepted, testified that the lower outlet of Monroe Meadows is lower than the barrier, so that if water is allowed to flow unhindered, without pumping, it will not collect in Monroe Meadows Basin and back up until the level reaches the height of the barrier, as appellant argues. Because the south or lower end of Monroe Meadows Basin is lower than the barrier, excess water will overflow the basin at the south end and be lost.

Appellant also contends that respondent, by pumping in Monroe Meadows Basin, has created a cone of depression that extends close enough to the barrier to lower the water level in the watershed and prevent water from flowing over the barrier. But respondent's water engineer testified that the cone of depression resulting from the pumping of the particular wells involved in this litigation does not extend as far north as the barrier.

The burden was upon Monolith to prove that the District's pumping in Monroe Meadows Basin lowered the water level below the barrier and thus interfered with the natural flow of Cache Creek. The trial court found that it did not, and properly denied an injunction.

■ However, the judgment vests in respondent the right to pump from Monroe Meadows Basin within limitation, while the evidence is simply that pumping from the wells presently located in Monroe Meadows does not interfere with the natural flow of Cache Creek at the barrier. There is no evidence to support respondent's right under the terms of the judgment to sink wells at any location within Monroe Meadows regardless of the effect upon the underground flow.

The judgment must be modified to provide that respondent District has the right to pump water from Monroe Meadows Basin in a manner not to interfere with the natural flow of the underground water at the whitnet barrier which separates Monroe Meadows Basin from Tehachapi Basin.

There need be no retrial of this action, at least not *in extensio,* as findings may be modified by the trial court consistent with the views herein expressed, and from the evidence noted.

The judgment is reversed with directions to the trial court to amend the findings of fact and conclusions of law and to enter a judgment in accordance with the views expressed in this opinion. Each party to bear its own costs on appeal.

Gargano, J., and Coakley, J., concurred.

A petition for a rehearing was denied March 24, 1970, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied April 22, 1970.