[Civ. No. 9722. Fourth Dist., Div. One. July 27, 1970.]

LOUIS REINKING et al., Plaintiffs and Appellants, v.
COUNTY OF ORANGE, Defendant and Appellant.

**COUNSEL**

Waldron & Bryant and Robert F. Waldron for Plaintiffs and Appellants.

Adrian Kuyper, County Counsel, Robert F. Nuttman, Assistant County Counsel, Timothy L. Strader, Deputy County Counsel, Ball, Hunt, Hart & Brown and Robert E. Aitken for Defendant and Appellant.

## OPINION

**AULT, J.**—For some time prior to November 1, 1952, and ever since, the plaintiffs, Louis and Frances Reinking, have been the fee owners of a 9.48-acre tract of land situated in the City of Costa Mesa, County of Orange. On November 1, 1952, they leased the property to the defendant, County of Orange, for a period of three years for use as a public refuse dump at an annual rental of $210.[1] The lease provided: "Rubbish disposal by the Lessee is to be by the 'Sanitary Fill' method; any part of the land where filling has been completed shall be left with a cover of approximately 18 inches of dirt."

The county operated a public refuse dump on the property for three years, from on or about November 1, 1952, until on or about October 31, 1955. During this period, the county excavated trenches on the property and filled them with typical combustible and noncombustible trash and refuse. From 12 to 14 trenches, 20 feet deep, 20 feet wide, and from 200 to 500 feet long were dug across the property in a generally north-south direction. The trenches were dug and filled, one at a time; approximately 4 to 5 feet of natural soil was left undisturbed between them. As each trench was filled with trash, it was rolled about every 3 vertical feet with a 20-ton crawler tractor. Combustible materials were burned and fires were extinguished with water before the trenches were rolled. When a trench was nearly filled with trash and refuse, it was covered with approximately 18 inches of dirt and rolled with a 20-ton tractor and a carry-all filled with 12 cubic yards of dirt. Of the entire tract slightly over 4 acres was actually filled in the manner indicated.

When the sanitary fill operation terminated in October 1955, possession of the property was returned to plaintiffs. It remained vacant, and in 1960 was leased by plaintiffs to three persons for the purpose of constructing and operating a trailer park. Between February and October 1961, the lessees constructed a 119-space trailer park on the premises. In May 1962, the lease was terminated, and since that time plaintiffs have operated the trailer park.

In September of 1963, plaintiffs began to notice cracks, breaks and settlement in some of the trailer park improvements. Smoke actually emerged from some of the cracks, indicating the trash and refuse under ground continued to burn. Since that time, portions of plaintiffs' buildings, streets, walks, trailer foundations and utility lines have continued to sink, crack, break and subside. Subsidence and damage was particularly exces-

---

[1]Plaintiffs received, or at least anticipated receiving, by reason of the lease and the operation of the refuse dump, the additional benefit of raising the level of their property which was below grade.

sive south of a street on the property known as Kings Way, causing plaintiffs to discontinue permanently the use of 19 trailer spaces in the area in June 1964. The evidence indicates subsidence will continue in the future, perhaps for as long as 100 years.

Plaintiffs brought this action against the county in 1964. It was tried on five theories of recovery: breach of contract, negligence, creation of a dangerous and defective condition, waste, and inverse condemnation. By stipulation, the trial was bifurcated. The liability issue was submitted to the court for decision, after which the issue of damages was determined by a jury. The court found the county had not breached the lease agreement and had not been negligent in the conduct of the dump operation. It denied recovery under the theory of waste and creation of a dangerous and defective condition. Basing its decision on *Albers* v. *County of Los Angeles,* 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129], the court allowed recovery in inverse condemnation. However, it limited the damages recoverable to the area of the trailer park lying south of Kings Way. In this connection, the court made the following findings of fact: "19. That portion of plaintiffs' property southerly of Kings Way has suffered substantial physical damage as a direct and proximate result of the plan and design, construction and operation of the public refuse dump by defendant on plaintiffs' property; that said damage consists of extreme and abnormal differential settlement and subsidence which damage did not occur, or could not have been reasonably expected to occur, by reason of the necessary, natural and ordinary use of plaintiffs' property by defendant during the time that defendant used plaintiffs' property for a public refuse dump; and that said damage was not reasonably foreseeable and could not have been reasonably anticipated by any reasonable person.

"20. The subsidence damage which occurred outside the area described in the preceding finding did not consist of extreme and abnormal differential settlement and could have been reasonably anticipated by the parties and was the result of the necessary, natural and ordinary use of plaintiffs' property by defendant during the period of time defendant used the subject property for a public refuse dump."

The damage phase of the case was tried, and the jury was instructed consistent with the findings. By verdict, the jury determined: "Plaintiffs' property has suffered a diminution of market value by reason of the extreme subsidence southerly of Kings Way in the sum of $80,000.00."[2]

---

[2]By special verdicts, the jury also found the cost of cure in the area of the property southerly of Kings Way, together with certain incidental expenses and damages in connection therewith, was slightly in excess of $80,000. Under the court's instructions, the jury returned a general verdict in favor of plaintiffs in the lesser amount, the sum of $80,000.

Judgment, incorporating the court's findings of fact and conclusions of law and the jury's verdict, was appropriately entered. The plaintiffs and the County of Orange have both appealed.

### CONTENTIONS ON APPEAL

1. Contentions of the defendant, County of Orange.

a) There can be no liability for inverse condemnation where a public entity has the contract right to perform the conduct upon which the claim of liability is based.

b) The conduct of the County was not the proximate cause of the damages.

2. Plaintiffs' contentions.

a) The trial court's findings limiting plaintiffs' damages in inverse condemnation on the grounds of estoppel are not supported by the evidence.

b) Defendant is liable to plaintiffs for breach of contract.

c) Defendant is lable to plaintiffs for the creation of a dangerous condition on the property.

*The trial court correctly interpreted Albers v. County of Los Angeles as permitting recovery under the theory of inverse condemnation, and as limiting recovery to damages for physical injury to the property which neither the plaintiffs, the county nor any other reasonable person could have foreseen at the time the lease was executed.*

Article I, section 14, of the California Constitution provides: "Private property shall not be taken *or damaged* for public use without just compensation . . ." (italics added). In *Albers v. County of Los Angeles, supra,* 62 Cal.2d 250, the issue presented was the interpretation of the quoted constitutional provision in a case, ". . . where actual physical damage is proximately caused to real property, neither intentionally nor negligently, but is the proximate result of the construction of a public work deliberately planned and carried out by the public agency, where if the damage had been foreseen it would render the public agency liable?" [P. 262.] The Supreme Court first concluded, except in situations (1) where the state had the common law right to inflict the kind of damage involved (see *Archer v. City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1], upper riparian owner's right to inflict damage upon lower riparian owner), and (2) where the damage is non-compensable because it results from the proper exercise of the police power (see *Gray v. Reclamation Dist. No. 1500,* 174 Cal. 622 [163 P. 1024]), the constitutional provision requires the public agency to compen-

sate the owner for any physical injury to his property caused by the public improvement whether such injury is foreseeable or not. (*Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, 262-264.)

■ As to foreseeable damage, the rule is the same whether the property is taken for the public use through condemnation proceedings or is obtained for public purpose by deed or consent. Where private property is taken by condemnation, it is assumed the owner has received in that proceeding compensation for all reasonably foreseeable damage to his property resulting from the taking and public use. Where the owner of land has consented to the taking by giving a deed, he may not subsequently recover any damage he might have recovered had the public use been taken through condemnation proceedings. In either event, it is assumed the owner was compensated for all reasonably foreseeable injury in the first instance and he is estopped to claim damages for such injury at a later date. (*Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, 265-266; *Sutro Heights Land Co.* v. *Merced Irr. Dist.,* 211 Cal. 670, 692-693 [296 P. 1088]; *Sternes* v. *Sutter Butte Canal Co.,* 61 Cal.App. 737, 743 [216 P. 66].)

■ By adoption of the appellate court opinion, the Supreme Court further held in *Albers* estoppel to claim subsequent damages does not apply to damages which were not reasonably foreseeable at the time of public acquisition. At page 265, the court stated: "While it may well be true that the Companies [plaintiffs], by consenting to the fills, would be estopped to claim the inverse condemnation damages reasonably to be anticipated by such fills, it does not appear they are estopped as to damages which neither they, nor the county, nor any reasonable person would have foreseen."

We see no reason why the rule enunciated in *Albers* should not be applicable to the case before us, or why plaintiffs' consent to the public use here involved should be deemed of broader variety because it is contained in a lease agreement rather than a grant for right-of-way purposes. ■ A public entity may acquire property for public use by lease as well as by grant or condemnation. ■ If it does so, and the property is damaged by reason of the public use, Article I, section 14, of the California Constitution requires just compensation to be paid to the owner. ■ By entering into a lease permitting the County to use the property for a sanitary fill, plaintiffs consented to such damage to the property as could be reasonably anticipated from the natural and ordinary operation of the sanitary fill, but they are not precluded or estopped to claim damage which neither they, the County, nor any other reasonable person, would have anticipated. (*Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, 265-266; see also

*Cox* v. *State of California,* 3 Cal.App.3d 301, 308-309 [82 Cal.Rptr. 896]; *Williams* v. *Sutter-Butte Canal Co.,* 82 Cal.App.2d 100, 103 [185 P.2d 664].)

Based upon evidence which included his own inspection and observation of the property, expert testimony concerning what was known, and what was not known, about sanitary fill operations at the time in question, expert testimony as to the causes of the general subsidence on the property as well as the extreme subsidence which occurred southerly of Kings Way, and testimony concerning statements made to plaintiffs by county employees at the time of the lease, and during the fill operation, the trial judge found: (1) the extensive differential settlement which occurred on the property to the south of Kings Way was not reasonably foreseeable; (2) the subsidence damage which occurred outside that area, and which did not consist of extreme differential settlement, was reasonably foreseeable; and (3) all of the subsidence on the property was proximately caused by the plan, design, construction and operation of the public improvement. These findings are supported by the evidence. Contrary to the plaintiffs' contention even though all the damage was found to be the proximate result of the plan, design, construction and operation of the public improvement, the trial court correctly limited plaintiffs' recovery to that damage which was not reasonably foreseeable at the time the lease was executed. (*Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, 265-266.)

■ The trial court's finding the County did not breach the lease agreement is also supported by the evidence. The determination of the issue largely depends upon the meaning to be assigned the term "sanitary fill method" used in the agreement. There is evidence to indicate the county did not conduct the fill operation in the exact manner plaintiffs had been told it would be carried out, but there is also evidence the deviation had little or no effect upon the subsidence problem. There was also substantial evidence to the effect the sanitary fill operation was conducted in accordance with the then generally accepted practices and procedures. Moreover, the evidence reveals Mr. Reinking was frequently on the premises to observe the fill operation and did not at any time object to the manner in which it was conducted. The most that can be said is the evidence was in conflict on the issue. The trial court's resolution of the conflict adversely to the plaintiffs may not be disturbed on appeal.

■ We also concur in the trial court's conclusion the County is not liable to plaintiffs for the creation of a dangerous condition on the property. Government Code section 835, provides in part: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a

dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a *reasonably foreseeable, risk of the kind of injury which was incurred, . . .*" (italics added).

We do not believe the code section was intended to provide a remedy under the facts and circumstances of this case, and plaintiffs have cited no case in which it has been given a similar application. Moreover, the section, by its terms, limits recovery to *reasonably foreseeable injury* caused by the dangerous condition. As to reasonably foreseeable injury caused by the necessary and ordinary use of the property as a sanitary fill, it must be assumed, under the cases we have cited, plaintiffs have already received compensation. Absent a showing the condition was caused by the negligence of the County (plaintiffs have not questioned the court's finding the County was not negligent on appeal), and not by the necessary and ordinary use of the property as a sanitary fill the rules already cited should apply. Plaintiffs are not entitled to be compensated twice for the same damage in condemnation, or under any other theory of recovery. The trial court properly rejected palintiffs' contention they are entitled to recover damages under Government Code section 835.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

The petition of the defendant and appellant for a hearing by the Supreme Court was denied October 15, 1970. Wright, C. J., Burke, J., and Sullivan, J., were of the opinion that the petition should be granted.