[Civ. No. 17150. Fourth Dist., Div. Two. Apr. 22, 1977.]

JOHN B. ELLENA, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

246

COUNSEL

Goldstein, Barceloux & Goldstein, P. M. Barceloux, Burton J. Goldstein, Ralph Golub, Keith S. Humphreys, Ronald E. Stewart, Thomas A. Seaton, Jefferson E. Peyser and M. Reed Hunter for Plaintiff and Appellant.

Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Robert W. Vidor and Jack M. Miller for Defendant and Respondent.

OPINION

TAMURA, J.—By a 1967 stipulated judgment in condemnation, the State of California acquired parcels of land across plaintiff's property for the construction of a segment of a freeway. During a prolonged 1969 rainstorm, plaintiff's property suffered considerable flood damage; the freeway fill acted as a dam and the accumulated surface waters discharged through the freeway drainage system outletting on plaintiff's remaining property caused substantial erosion and channeling. Plaintiff[1] brought the instant action for damages alleging two causes of action: The first charged that the flood damage was caused by the design, construction and maintenance of the freeway improvements and the second alleged that the damages were the proximate result of the negligent design, construction and maintenance of the public improvements. The state interposed a number of defenses, including the defense that the stipulated judgment in the eminent domain action was res judicata and precluded plaintiff from recovering on his complaint.

The trial was bifurcated and the res judicata defense was tried first to the court without a jury. Following an extended evidentiary hearing, the trial judge rendered a memorandum of intended decision holding that "the doctrines of res judicata and collateral estoppel" precluded plaintiff

---

[1]Plaintiff John Ellena died after the action was filed and the suit has thereafter been prosecuted by the executrix under his will. For convenience, however, we shall refer to plaintiff as still being Mr. Ellena.

from recovering for the flood damage to his land. The court directed counsel for the state to prepare the judgment unless findings were requested. Findings were not requested and the court signed and entered a judgment dismissing plaintiff's action with prejudice. Plaintiff appeals from the judgment.

The central issue on this appeal is whether the prior stipulated judgment in condemnation precluded plaintiff from maintaining the instant action. We have concluded that the trial judge's determination that principles of res judicata and collateral estoppel precluded plaintiff from recovering on his complaint must be upheld.

## FACTS

Viewing the evidence in the light most favorable to the party prevailing below, as we must, the facts may be summarized as follows:

### Property in the Before Condition

Plaintiff's property is on an alluvial fan which lies between Cajon Creek and Lytle Creek at the base of the foothills of the San Gabriel Mountains. The configuration of the property may be roughly visualized as the letter "A" imposed above the letter "U," with the apex of the A pointing in a northwesterly direction and the external lines of the A and U as representing the base of the surrounding foothills.[2] The crossbar of the A represents the approximate location of the freeway segment crossing plaintiff's property. Generally the area within the letter A drains from west to east and the area represented by the U from east to west. Where the two areas join, the drainage is generally from north to south into the Lytle Creek wash area. The property has been used for many years as a vineyard.

The surface waters flowing across the alluvial fan represented by the letter A are not confined to definite water courses but flow along shifting, tangled veins varying in location, depth and width from storm to storm.

### The Public Improvements and the Condemnation Action

In 1963 the state made a hydrological study to define the water shed area above the proposed freeway and thereafter prepared detailed plans

---

[2] We credit the state's attorney for devising the above convenient means of visualizing the property.

for the freeway and appurtenant improvements. The plans provided for an elevated freeway across plaintiff's property accomplished by cuts and fills and included four drainage structures to convey surface waters under the freeway and onto plaintiff's remaining property. From south to north along the freeway segment across plaintiff's property, the drainage structures consisted of the following: A 30-inch CMP, a 54-inch CMP, a 24-inch CMP, and a 12 by 6 foot RCB.[3]

In the spring of 1966 a state right-of-way agent met with Mr. Ellena and showed him the right-of-way maps, the location of the freeway cut and fill areas, and advised him of the proposed drainage facilities.

In August 1966 the state filed its eminent domain action (People v. Swertfeger, S.B. Superior Court No. 132939) to acquire lands from plaintiff and others for the construction of the freeway. The right-of-way maps attached to the complaint showed the location and size of the proposed freeway drainage facilities. Plaintiff filed an answer to the complaint in which he claimed $178,000 as the value of the land taken and $376,000 as severance damages.

In March 1967 the state commenced construction of the freeway and the last drainage structure was completed in October 1967. On December 20, 1967, a stipulated judgment in condemnation was entered adjudging "that the just compensation to be paid for the taking of [plaintiff's property] is the sum of $155,765" together with interest. On the same day the state deposited the award with the court and obtained a final order of condemnation.

*The 1969 Flood Damage*

In January and February 1969 there was an unusually heavy and prolonged rainstorm in the area which saturated the soil and resulted in heavy runoffs from the surrounding hillsides. The concentrated flow through the freeway drainage facilities caused considerable erosion and channeling on plaintiff's property below the drainage outlets. In addition, a wing of the 12 by 6 foot RCB was damaged, some of the smaller drainage pipes were blocked by silt, and a portion of Devore Road which had been relocated by the state and which traversed plaintiff's property to the northwest of the freeway was washed out.

---

[3]CMP stands for corrogated metal pipe and RCB stands for reinforced concrete box.

The state presented expert witnesses who testified that the damage to plaintiff's property by reason of the construction of the freeway and drainage facilities as proposed was reasonably foreseeable in 1967 when the parties entered into a stipulated judgment.

## CONTENTS

Plaintiff urges: (1) Principles of res judicata and collateral estoppel did not preclude him from maintaining his action because the claimed damages (a) resulted from the failure of the public improvements to operate in the manner proposed and (b) were not reasonably foreseeable at the time the stipulated judgment was entered and (2) the court erroneously excluded extrinsic evidence offered to show that the parties intended to stipulate only as to the value of the land taken but not as to severance damages.[4] From the ensuing discussion we have concluded that plaintiff's attacks upon the judgment must fail.

## I

At the outset we review some of the legal principles involved in this appeal.

There are two aspects to the res judicata effect of a final judgment on the merits: (1) The judgment bars the parties (or those in privity with them) from litigating the same cause of action in a subsequent proceeding and (2) the parties (or those in privity with them) are collaterally estopped from litigating in a subsequent proceeding on a different cause of action any issue actually litigated and determined in the former proceeding. (*In re Russell,* 12 Cal.3d 229, 233 [115 Cal.Rptr. 511, 524 P.2d 1295]; *Busick* v. *Workmen's Comp. Appeals Bd.,* 7 Cal.3d 967, 972-973 [104 Cal.Rptr. 42, 500 P.2d 1386]; *Martin* v. *Martin,* 2 Cal.3d 752, 758 [87 Cal.Rptr. 526, 470 P.2d 662]; *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 810 [122 P.2d 892]; *Ford Motor Co.* v. *Superior Court,* 16 Cal.App.3d 442, 447-448 [94 Cal.Rptr. 127]. Rest., Judgments, § 68, com. a., pp. 293-295.) To the extent that the instant action seeks to recover damages resulting from the construction of the improvements in the manner proposed in the eminent domain case, it involves the same cause of action and plaintiff is precluded from litigating issues which were or could have been litigated in the former action. (*Klopping* v. *City of Whittier,* 8 Cal.3d 39, 58 [104 Cal.Rptr. 1, 500 P.2d 1345].) To the

---

[4]Plaintiff does not complain of the dismissal of his negligence cause of action.

extent that plaintiff's claim for damages involves a different cause of action, he is collaterally estopped from litigating those issues which were actually litigated and determined in the eminent domain action.

██ A condemnation award must once and for all fix the damages that will reasonably occur by reason of the construction of the public improvements in the manner proposed. (*People* ex rel. *Dept. Pub. Wks.* v. *Silveira*, 236 Cal.App.2d 604, 621-622 [46 Cal.Rptr. 260]; *East Bay Mun. Util. Dist.* v. *Lodi*, 120 Cal.App. 740, 762 [8 P.2d 532].) ██ Where property has been taken by condemnation or acquired by deed, it must be assumed that the owner has been compensated for all reasonably foreseeable damage to his property resulting from the acquisition and the construction of the proposed public improvements. (See *Reinking* v. *County of Orange*, 9 Cal.App.3d 1024, 1030 [88 Cal.Rptr. 695].) ██ Consequently, whether the property be acquired by condemnation or by consent, the landowner is estopped "from afterward prosecuting any action for the past, present, or future damages that may have occurred, or *reasonably be expected to occur,* by reason of the necessary, natural, and ordinary use" of the property for the public purpose for which it was acquired. (*Sternes* v. *Sutter Butte Canal Co.*, 61 Cal.App. 737, 743 [216 P. 66], italics supplied; *Albers* v. *County of Los Angeles*, 62 Cal.2d 250, 265-266 [42 Cal.Rptr. 89, 398 P.2d 129].)

██ The validity of the res judicata and collateral estoppel defenses in the instant case presented factual as well as legal issues and an evidentiary trial was held to resolve the factual issues. ██ The trial court's determination of the factual issues bearing on collateral estoppel by the former stipulated judgment is binding upon this court unless a contrary conclusion is the only one that can reasonably be drawn from the evidence. (See *Mehl* v. *People* ex rel. *Dept. Pub. Wks.*, 13 Cal.3d 710, 715-716 [119 Cal.Rptr. 625, 532 P.2d 489].) ██ Upon rendition of the judge's intended decision, however, neither party requested findings of fact and conclusions of law despite the judge's express reference to the need for such requests. Accordingly, no findings were made. On this state of the record, every intendment is in favor of the judgment of dismissal. It must be presumed that the trial judge found all necessary facts to support the judgment (*Reid* v. *Valley Restaurants, Inc.*, 48 Cal.2d 606, 609 [311 P.2d 473]; *Philbrick* v. *Huff*, 60 Cal.App.3d 633, 649-650 [131 Cal.Rptr. 733]), and the judgment must be affirmed if the implied findings are supported by substantial evidence (*Environmental Law Fund, Inc.* v. *Town of Corte Madera*, 49 Cal.App.3d 105, 119 [122 Cal.Rptr. 282]; *Childers* v. *Childers*, 74 Cal.App.2d 56, 62 [168 P.2d 218]).

With the foregoing principles in mind, we turn to plaintiff's contentions.

## II

■ Plaintiff's principal argument is that the stipulated judgment does not preclude him from maintaining the present action because (a) the damage to his land was caused by the failure of the public improvements to operate in the manner proposed and (b) the damages were not reasonably foreseeable. We reject the argument.

Although there was evidence of a partial failure of bench drains, in the absence of express findings it must be presumed that the trial court found that such failure was not a proximate cause of the damage to plaintiff's lands and that the damages that did occur were the reasonably foreseeable consequences of the construction of the improvements as proposed. ■ In this context, proximate cause " 'requires a convincing showing of a "substantial" cause-and-effect relationship which excludes the probability that other forces alone produced the injury.' " (*Olson* v. *County of Shasta*, 5 Cal.App.3d 336, 340 [85 Cal.Rptr. 77], quoting from Van Alstyne, *Inverse Condemnation: Unintended Physical Damage*, 20 Hastings L.J. 431, 435-436.) ■ There was substantial evidence to support the implied findings on proximate cause.

The evidence was uncontradicted that the improvements were constructed in accordance with the state's design plans at the locations depicted on the right of way maps. The state's expert testified that given the fact that plaintiff's land was on an alluvial fan, it was reasonably foreseeable that the concentrated discharge of flood waters from four drainage outlets onto plaintiff's remaining land would cause erosion and channeling. The same experts testified that while some of the smaller drainage pipes became silted up, this simply caused some of the flood waters to "end run" around the freeway segment and discharge upon lands not owned by plaintiff and that to the extent the blockage increased the flow in some of the larger drainage facilities, it may have resulted in slight additional erosion at the outlet of those drains but at the same time reduced erosion at the outlets of the blocked pipes. The state engineers further testified that the drainage facilities benefited plaintiff's lands by confining flood waters to specific areas thereby avoiding a general flooding of all of plaintiff's remaining lands.

Plaintiff sought to undermine the credibility of the state's experts by cross-examination suggesting that their opinion on foreseeability was based upon hindsight and by evidence that after the flooding, the state redesigned some of the improvements to avoid future damage to the freeway and appurtenant improvements. ■ However, needless to say, resolution of conflicts in the evidence, assessment of the credibility of the witnesses and the weight to be given the opinions of the experts were all matters within the exclusive province of the trier of fact.

■ Based upon the implied findings, the court below properly determined that plaintiff was precluded by the principles of res judicata from maintaining the present action. Former Code of Civil Procedure section 1246 in effect when the stipulated judgment was entered provided that a landowner in an eminent domain action must set forth in his answer the amounts claimed for the value of the parcel taken and any severance damages.[5] Former section 1248 defined severance damages as damages accruing to the portion of the property not taken by reason of its severance "and the construction of improvements in the manner proposed." Thus, the claim for damages for the reasonably foreseeable consequences of the construction and maintenance of the drainage facilities should have been claimed and litigated in the eminent domain action. Indeed, plaintiff's answer to the eminent domain complaint specifically made severance damages an issue by alleging that "the damage to the remaining portion of the real property" by the taking and "the construction of the improvements as proposed by plaintiff is the sum of $376,000."

Plaintiff argues that evidence of potential flood damage to his land would have been excluded in the condemnation action as being too speculative and remote. ■ While it is true that a landowner may not claim speculative or conjectural damages in an eminent domain proceeding (*People* ex rel. *Dept. P. W.* v. *Schultz Co.,* 123 Cal.App.2d 925, 935 [268 P.2d 117]), this is simply another way of saying that damages which are not reasonably foreseeable need not be asserted in the eminent domain action. ■ By its implied finding that the damages were reasonably foreseeable, the trial court necessarily rejected the claim that the damages were speculative and conjectural.

The dissent seizes upon State Engineer Jackson's testimony that "when you're crossing an alluvial fan, it's impossible to predict future

[5]The eminent domain chapter of the Code of Civil Procedure was revised and recodified in 1975.

flow patterns with certainty" and leaps to the conclusion, unsupported by the record, that the state's experts "affirmed again and again that what happened was *not* foreseeable." (Original italics.) The testimony singled out by the dissent pertains to the flow pattern of surface waters flowing down across plaintiff's property to the freeway embankment. Engineer Jackson testified that such waters flowing across the alluvial fan would not be confined to definite water courses but would run in tangled veins varying in location, depth, and width from storm to storm. Both engineers Jackson and Dibble testified repeatedly and without equivocation, however, that it was reasonably foreseeable, even to a layman, that when the surface waters reached the freeway embankment and were collected and discharged through the four cross drains, the concentrated flow issuing from them would result in erosion. Thus, there was substantial evidence supporting the trial judge's implied finding on foreseeability.

The dissent goes on to state, however, that his more fundamental quarrel with our analysis lies in our treatment of foreseeability as a question of fact. It is urged that had the eminent domain action gone to trial, evidence of potential flood damage to plaintiff's remaining lands by reason of the construction and maintenance of the freeway and the cross drains would have been excluded as being too speculative, conjectural and remote. The only authority cited for this startling proposition is *People* v. *Ayon,* 54 Cal.2d 217 [5 Cal.Rptr. 151, 352 P.2d 519]. Reliance on *Ayon* is misplaced. That case involved the propriety of a trial court's ruling in a condemnation trial rejecting the condemnee's offer of proof of damages for temporary interference with his right of access to the remaining property during the period of the public improvement's construction. In upholding the trial court's ruling, the Supreme Court held: (1) Temporary interference, provided it is not unreasonable, with the owner's right of access to his property during the course of construction is noncompensable; (2) while unreasonable and substantial interference with the property owner's rights during construction may be compensable, such damages cannot be recovered before they occur because they may never occur and until they do so, such damages are purely speculative; and (3) where the condemnation action is tried before the improvement is constructed and substantial temporary injury occurs during construction, the property owner may maintain a subsequent action for such damages.

In the case at bench, we are concerned with a claim for severance damages resulting from the construction of public improvements in the

manner proposed, not a claim for temporary interference with a property owner's rights during construction. Had the eminent domain action gone to trial, evidence of potential flood damage to plaintiff's remaining lands by reason of the construction of the freeway embankment and cross drains would clearly have been admissible on the issue of severance damages to the remainder by reason of the taking and the construction of the improvements in the manner proposed. (*Pac. Gas etc. Co. v. W. H. Hunt Estate Co.,* 49 Cal.2d 565, 571-575 [319 P.2d 1044]; *Yolo Water & Power Co. v. Hudson,* 182 Cal. 48, 52 [186 P. 772]; *Colusa & Hamilton R. R. Co. v. Leonard,* 176 Cal. 109, 119-120, 123-124 [167 P. 878]. See *City of Baldwin Park v. Stoskus,* 8 Cal.3d 563, 567-568 [105 Cal.Rptr. 325, 503 P.2d 1333].) One need not possess the expertise of a hydraulic engineer to foresee that in the event of a prolonged heavy rainstorm, surface waters intercepted by the freeway embankment and discharged on the remaining lands through the cross drains would result in erosion at the points of discharge.[6]

Citing *Mehl v. People* ex rel. *Dept. Pub. Wks., supra,* 13 Cal.3d 710, plaintiff argues that damages resulting from the construction of a public improvement may not be found to be reasonably foreseeable unless the landowner was apprised of the potential future damage. *Mehl* does not stand for that proposition. In that case land was deeded to the state for freeway purposes with an express waiver of "any claim for any and all damages to the grantor's remaining property" by reason of the construction and maintenance of the freeway. The state subsequently constructed the freeway and installed a drainage pipe under it, channeling surface waters and freeway runoffs onto plaintiff's property. The trial court found that plaintiff was not estopped from maintaining a cause of action in inverse condemnation for the flood damage caused by the waters drained onto his property. Although the Supreme Court reversed the judgment in favor of the landowner on the issue of damages, it upheld the trial court's finding that the landowner was not estopped to litigate the issue of liability.

The critical difference between *Mehl* and the instant case is that in the former, plans for the drainage facility were nonexistent when the

[6]In *Pac. Gas. etc. Co. v. W. H. Hunt Estate Co., supra,* 49 Cal.2d 565, plaintiff acquired an easement for two electrical transmission lines spanning defendant's property. Defendant, who irrigated his land by a sprinkler system, adduced testimony over plaintiff's objection on the danger of electrocution in the event a sprinkler pipe would break causing water to come into contact with the power lines. The court held this testimony was properly admissible on the issue of severance damages caused to the remainder by virtue of the taking and the construction of the transmission lines.

landowner deeded his property to the state. Nor was he told of any proposed drainage plan. In the instant case plaintiff had actual as well as constructive notice of the plans before the stipulated judgment was entered. The right of way maps appended to the eminent domain complaint served on plaintiff showed the dimensions and locations of the proposed drainage facilities; a right-of-way agent testified that he met with plaintiff and informed him of the location and nature of the drainage system to be constructed; and, in response to an interrogatory from plaintiff's former counsel for a description of the improvements to be constructed, the state gave a general description of the improvements and referred plaintiff to specific design plans on file in the state's San Bernardino office which plans were available for public inspection.

### III

Finally, plaintiff argues that extrinsic evidence was admissible to show that the stipulated judgment in condemnation was intended to resolve only the issue of the value of the land taken and not the severance damage issue and on that assumption complains: (1) The court erroneously excluded an appraisal report prepared by plaintiff's former appraiser for use in the condemnation action and (2) the court erroneously precluded plaintiff from eliciting from his former attorney testimony concerning his discussions with a state right-of-way agent preceding the stipulated judgment.

Plaintiff's argument assumes two legal propositions: (1) That a stipulated judgment may be collaterally attacked on the ground it does not conform to the stipulation of the parties and (2) that extrinsic evidence is admissible to interpret the language of a stipulated judgment. The first legal assumption is incorrect. A judgment which does not conform to a stipulation may be reformed or contested on direct appeal but may not be collaterally attacked on the ground it fails to conform to the stipulation of the parties. (*Hobbs* v. *Duff,* 43 Cal. 485, 490; *Yarus* v. *Yarus,* 178 Cal.App.2d 190, 199-200 [3 Cal.Rptr. 50]; *Nielsen* v. *Emerson,* 119 Cal.App. 214, 218 [6 P.2d 281].) A judgment by stipulation is as conclusive a bar as a judgment rendered after trial. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 170, and cases there cited.) However, there is validity to the second legal assumption in plaintiff's argument; extrinsic evidence is admissible to resolve ambiguities in a stipulated judgment. (*Larsen* v. *Beekmann,* 276 Cal.App.2d 185, 191 [80 Cal.Rptr. 654].)

 Plaintiff claims that the court committed prejudicial error by precluding him from introducing certain extrinsic evidence for the purpose of showing that the amount of compensation agreed upon in the stipulated judgment was only for the value of the parcel taken and not severance damages. We address the merits of this argument.

Had the judgment in condemnation been entered after a contested trial, plaintiff would manifestly be estopped from prosecuting the present action. As we previously observed, just compensation awarded in a condemnation action is presumed to include compensation for all reasonably foreseeable damages sustained as a result of the taking and use of the property in the manner proposed by the condemner. (*Mehl* v. *People* ex rel. *Dept. Pub. Wks., supra,* 13 Cal.3d 710, 716; *Reinking* v. *County of Orange, supra,* 9 Cal.App.3d 1024, 1030.) By entering a judgment of dismissal in the case at bench, the trial judge impliedly found that the damages for which plaintiff now seeks compensation were foreseeable and as a consequence, plaintiff's present action was an impermissible attempt to litigate an issue which could have been litigated in the former action. Plaintiff, however, claims that the stipulated judgment was not intended to resolve the issue of severance damages and that he is not, therefore, precluded from maintaining the instant action.

 Although a stipulated judgment is no less conclusive than a judgment entered after trial and contest (*Avery* v. *Avery,* 10 Cal.App.3d 525, 529 [89 Cal.Rptr. 195], and cases there cited; *People* ex rel. *Mosk* v. *Barenfeld,* 203 Cal.App.2d 166, 175 [21 Cal.Rptr. 501]) it is axiomatic that its res judicata effect extends only to those issues embraced within the consent judgment. (*Miller & Lux, Inc.* v. *James,* 180 Cal. 38, 44 [179 P. 174]; *Larsen* v. *Beekmann, supra,* 276 Cal.App.2d 185, 191; *People* ex rel. *Mosk* v. *Barenfeld, supra,* 203 Cal.App.2d 166, 176-177; *Laguna Drain. Dist.* v. *Charles Martin Co.,* 5 Cal.App. 166, 169-171 [89 P. 993].) Thus, while a stipulated judgment normally concludes all matters put into issue by the pleadings, the parties can agree to restrict its scope by expressly withdrawing an issue from the consent judgment. (*Miller & Lux, Inc.* v. *James, supra;* see *Monolith Portland Cement Co.* v. *Mojave Public Util. Dist.,* 4 Cal.App.3d 840, 846 [84 Cal.Rptr. 639]; *People* ex rel. *Mosk* v. *Barenfeld, supra.*) As cogently stated in *Miller & Lux, Inc.* v. *James, supra,* at page 44: "The rule of *res adjudicata* is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy, but *where they expressly agreed to withdraw an issue from the court, the reason for the rule ceases. The issue is not in fact*

adjudged, and the parties themselves having consented to that method of trial are not entitled to invoke the rule which requires parties to submit their whole case to the court. If they consent to adjudicate their differences piecemeal, there is no reason that the court should extend the rules of law to prevent that which they *had expressly agreed might be done.*" (Italics supplied.)

In the present case there is no express language in the stipulation for judgment withdrawing the severance damage issue from the eminent domain action. Insofar as is here pertinent the stipulation simply provided that a judgment in condemnation in the form attached may be entered. The attached judgment form provided "that the just compensation to be paid for the taking of said parcels . . . is the sum of $155,765, together with interest. . . ."

Plaintiff, however, argues that the word "taking" is ambiguous in that it could signify that the compensation agreed upon was only for the value of the parcel taken and that, therefore, extrinsic evidence was admissible to show that the stipulated judgment was not intended to compensate for severance damages.

We agree that because of the contractual aspect of a stipulated judgment, extrinsic evidence may be admitted to resolve ambiguities in its language. (*Larsen* v. *Beekmann, supra,* 276 Cal.App.2d 185, 191.) But for plaintiff to prevail, he must not only show that the word "taking" is ambiguous, but that the parties used the word to express an agreement to withdraw the issue of severance damages from the scope of the stipulated judgment. The exception to the normal res judicata effect of a judgment, as articulated in *Miller & Lux, Inc.* v. *James, supra,* 180 Cal. 38, requires that an otherwise included issue be withdrawn by an express reservation. The proffered extrinsic evidence failed to show such agreement.

Normally, just compensation for the "taking" of property in eminent domain includes all damages that will reasonably accrue from the taking and the construction of the proposed improvements. (*People ex rel. Dept. Pub. Wks.* v. *Silveira, supra,* 236 Cal.App.2d 604, 621-622.) Interestingly, in the court below, plaintiff disavowed any attempt to litigate in this action the entire severance damage issue; he conceded he was not attempting to recover damages caused by the severance of the part taken from the remainder (including damages for impairment of access) but only such severance damage as accrued from

the construction of the drainage facilities. But, assuming an ambiguity in the word "taking" as used in the stipulated judgment and assuming further that extrinsic evidence was admissible to determine what the parties meant by using that word, the evidence which plaintiff complains was erroneously excluded would not have shown that the parties agreed to a piecemeal litigation of the condemnation action by withdrawing the issue of severance damages for future determination or litigation.

Insofar as the appraiser's report is concerned, the record shows that it was marked for identification but fails to show that it was ever offered in evidence. Plaintiff is, therefore, precluded from raising the issue of its admissibility. But even had it been offered, there would have been no error in its exclusion. The manifest purpose behind plaintiff's attempt to get the report before the court was to show that it did not mention potential flood damage to the remaining land by reason of the construction and maintenance of the proposed freeway drainage system. However, the subjective intent of the appraiser or the plaintiff's former attorney was irrelevant to the issue as to whether the plaintiff and the state had agreed to withdraw the severance damage issue from the condemnation action. The stipulated judgment, like other agreements, must be construed by an objective standard and it is immaterial that one of the parties had an undisclosed intention or belief as to what it meant. (*Citron* v. *Franklin,* 23 Cal.2d 47, 51 [142 P.2d 16]; *Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128, 133 [48 P.2d 13]; *Consolidated Dock & Storage Co.* v. *Superior Court,* 18 Cal.App.3d 949, 952 [96 Cal.Rptr. 254].)

As to the conversation between plaintiff's former attorney and the state right of way agent, plaintiff was permitted to elicit testimony from the attorney that he never discussed drainage problems with the right of way agent or anyone else. When he was asked whether he discussed the "amounts of settlement" with the right of way agent, he answered "Yes," before an objection could be interposed. An objection was made and discussed and the court sustained the objection on the ground a judgment cannot be altered or modified by parol evidence but the answer was never stricken. Thereafter no further questions were asked the attorney on that subject.

Plaintiff contends that the trial judge's statement that he would not permit introduction of parol evidence to alter or modify the judgment excused him from attempting to elicit further testimony from his former attorney concerning his conversation with the right-of-way agent and that his failure to do so should not preclude him from raising the issue of the

admissibility of the attorney's conversation with the right of way agent. We agree that plaintiff was justified in assuming that objections to further questions on the subject would have been sustained and that he, therefore, has the right to raise the issue of the propriety of the court's ruling precluding him from pursuing the matter further at trial. However, plaintiff has shown no prejudice by being impliedly foreclosed from eliciting further testimony from his former attorney concerning the conversation with the right-of-way agent.[7] The only offer of proof made by plaintiff was that the testimony of the attorney would have shown that the settlement figure agreed upon was based on a per acreage value of the part taken. That offer would have proved nothing more than that plaintiff's former attorney either overlooked a component of compensable severance damage or was satisfied that the flood protection benefit to the major portion of plaintiff's remaining lands equaled or exceeded any potential harm from the cross drains. Giving the most liberal interpretation to the offer, it falls far short of an offer to prove that in discussions with the right-of-way agent it was mutually agreed that severance damage by reason of potential flood damage from the construction and maintenance of the drainage facilities was reserved for future resolution.[8]

We conclude that the exclusion of plaintiff's proffered evidence was neither erroneous nor, even if erroneous, prejudicial.

Judgment affirmed.

Gardner, P. J., concurred.

**McDANIEL, J.**—I dissent.

As I read the majority's opinion, it appears that the key to their holding on the res judicata issue is their determination that there was an implied finding that the damages to the Ellena lands were reasonably foreseeable. If that position is sound, it is dispositive of the case, and the trial court must be affirmed.

However, for there to be an implied finding of foreseeability, there must be some evidence in the record to support it. As I read the record,

[7]Evidence Code section 354 provides that a judgment shall not be reversed ·for erroneous exclusion of evidence unless it results in a miscarriage of justice "and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to ·the court by the questions asked, an offer of proof, or by any other means; . . ."

[8]As the state's attorney observed at oral argument, an agreement on the part of the state to such a piecemeal litigation of a condemnation case would be unprecedented.

what happened in 1969 as a matter of fact was totally unforeseen by everyone, including the state's engineers who designed the facility here under question. The testimony of the state's experts affirmed again and again that what happened was *not* foreseeable. The witness Jackson at one point testified, "[t]he big unknown here—and I hate to keep harping on it, but it is the case when you're dealing with drainage, when you're crossing an alluvial fan, it's impossible to predict future flow patterns with certainty."

It was this inability to predict the drainage pattern over the alluvial fan that in turn made unforeseen what resulted from the runoff which accompanied the heavy rains in 1969. What were those results? Item: the bench drains failed to operate as anticipated and because of this there was a greatly increased flow of water passing through the cross drains onto the Ellena property. Next item: excluding repairs to the bench drains, repairs to the freeway facilities damaged by the runoff and resulting again from a failure of the entire design to function as anticipated amounted to $112,551.25. Surely, if the storm consequences were foreseeable, the state's own design engineers would not have knowingly built a $112,551.25 defect into their own structure.

In its opinion, the majority points to certain evidence as supporting the implied finding of foreseeability. More particularly, they remind that the state's experts "testified repeatedly and without equivocation, however, that it was reasonably foreseeable, even to a layman, that when the surface waters reached the freeway embankment and were collected and discharged through the four cross drains, the concentrated flow issuing from them would result in erosion." I respectfully suggest that this testimony begged the real question. As noted, the failure of the bench drains (unforeseen) greatly increased the flow of water through the cross drains and thus the volume of such increased flow was also unforeseen. This unforeseen volume of flow was what caused the damage, and in the face of this extrinsic, uncontradicted evidence, it defied reason and logic for the state's witnesses to have continued to protest that the extent of the erosion which did occur was foreseeable. Such generalized statements of opinion in view of the physical facts were and are inherently unbelievable.

However, there is a more fundamental defect in the treatment of the case by the majority. In their characterizing the implied findings as including a finding "that the damages that did occur were the reasonably foreseeable consequences of the construction of the improvements as

proposed," they treat foreseeability as a matter of fact. It is on this basic determination that I disagree with the majority, for I see that issue as one of law.

To illustrate, suppose Ellena had taken his case to trial in 1967. Suppose at that trial he had offered to show by expert testimony the amount of erosion which could later have carved through his lands IF there were to be a storm of the size of the 1969 storm, IF the flow over the freeway cut were to be of the volume which it was in 1969, and IF the bench drains were to silt up and allow this flow to pour down the side of the cut and through the four cross drains. In the face of this offer of proof, the trial judge in the imagined trial in 1967 would have been faced with a *legal* determination in deciding whether to admit such evidence.

It seems clear, in view of the holding in *People* v. *Ayon,* 54 Cal.2d 217 [5 Cal.Rptr. 151, 352 P.2d 519], that the trial judge in the 1967 hypothetical trial would have rejected the offer of proof. He would have considered "[s]uch possible damages . . . too speculative to be recover[ed] in [that] action." (*Id.,* at p. 229.) "Too speculative" and "not foreseeable" are shorthand forms which describe a policy determination by the courts which operates to define the perimeters of permissible recovery.

Although Ellena abandoned his claim based on negligence, that body of law provides a ready and valid analogy of the kind of determination here involved. In negligence cases "foreseeability" is a matter of law. It is a label for the policy assessment which leads to or denies the imposition of duty to pay for the consequences of a failure to behave within a factually determined standard of care.

The cases talk of proximate cause and foreseeability interchangeably, and, while whether a person is exercising reasonable care is a matter of fact, what is deemed to be the proximate result of the want of reasonable care or what is deemed to be a foreseeable risk as a consequence of that want of reasonable care is a question of law.

Turning to the hallowed Cardozo language, "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." (*Palsgraf* v. *Long Island R. Co.,* 248 N.Y. 339 [162 N.E. 99, 100, 59 A.L.R. 1253].)

Stated otherwise, in the absence of overriding policy considerations, a "[d]efendant owes a duty, in the sense of a potential liability for damages, only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent, in the first instance. [Citations.]" (*Dillon* v. *Legg*, 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

Surely, if "foreseeability" in negligence cases is the shorthand label for the sum of those seven policy considerations which are used as aids in defining the legal duty to behave with reasonable care (*Commercial Standard Ins. Co.* v. *Bank of America*, 57 Cal.App.3d 241, 248 [129 Cal.Rptr. 91]; *Derrick* v. *Ontario Community Hospital*, 47 Cal.App.3d 145, 153 [120 Cal.Rptr. 566]), then it can be conscientiously urged that "foreseeability" as used in cases of the kind at bench is likewise a question of law. In other words, if at the hypothetical trial of 1967 the trial judge would have been faced with a *legal* determination of whether the prospective erosion damages were too speculative or not foreseeable, how does that legal determination become metamorphosed into a factual one when the plaintiff seeks by a latter day effort to recoup his losses as prescribed in *People* v. *Ayon, supra,* 54 Cal.2d 217.

The majority opines that this reliance on *Ayon* is misplaced because the facts of that case involved an attempt by the land owner to claim damages for prospective events in the nature of temporary interference with access to his property during construction. I respectfully suggest that this factual difference is not a basis for distinguishing the legal principle involved. The court in *Ayon* excluded the offered proof not because the damages to be shown thereby would have resulted from a temporary interference but because such damages were too speculative. That is precisely the principle that is here applicable.

This is of course a close question turning upon a legal determination of policy, and it does not meet the issue to state as does the majority that "[o]ne need not possess the expertise of a hydraulic engineer to foresee that in the event of a prolonged heavy rainstorm, surface waters intercepted by the freeway embankment and discharged on the remaining lands through the cross drains would result in erosion at the points of discharge." I have never suggested that erosion at the discharge end of the cross drains was not foreseeable at the time that the 1967 judgment was reached by stipulation. What was not foreseeable to the layman lacking the "expertise of a hydraulic engineer" was that the bench drains

would fail and result in a collection of water into the cross drains far in excess of what the project's designers themselves ever contemplated.

Turning again to the language of *Ayon*, ". . . if the improvement is not carried out as proposed, and, if as a result, unnecessary or unreasonable interference with appellants' rights of possession or access occurs, then they may bring an action for such damages *after they have occurred.*" (*People* v. *Ayon, supra,* 54 Cal.2d 217, 229; italics added.)

Continuing, "[b]ut such damages cannot be recovered before they have occurred, for the obvious reason that they may never occur." (*Id.,* at p. 229.) Applied to the Ellena situation, years could have passed without there having been a storm the size of the one in 1969, and should such a storm never have occurred, there would have been no way for the defect in the design of the facility to have manifested itself. However, the storm did occur, the defect in design did result in substantial damage to the lands below the freeway, and under the rule laid down in *Ayon,* Ellena should have been allowed to prove his damages in the subsequent action.

Thus the misapplication of the rule of res judicata by the trial court operated to foreclose the plaintiff from litigating an issue which had not and could not have been litigated before the heavy rains in late 1969. The affirmance of the judgment below countenanced the denial of Ellena's constitutional right to just compensation and as such should not be tolerated. I would reverse the judgment and allow the case to proceed to the second phase of the bifurcated trial.

A petition for a rehearing was denied May 11, 1977. McDaniel, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied July 6, 1977.