57 F.3d 1077
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 LA CHOLLA CURTIS LIMITED PARTNERSHIP, an Arizona limited
partnership; Desert Steppes I, an Arizona limited
Partnership,
Plaintiffs-Third-Party-Defendants-Appellants,
v.
PIMA COUNTY; Sanitary District No. 1 of Pima County,
Defendants-Third-Party-Plaintiffs-Appellees.
 No. 93-16186.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 16, 1995.
Decided June 16, 1995.
 
 Before: REINHARDT, THOMPSON, AND KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Purchasers of land which, more than twenty years ago, was a sanitary landfill, sue the County which operated the landfill. They allege various state claims arising out of ground pollution. The claims are barred, mostly by limitations.
 
 
 3
 Facts.
 
 
 4
 In 1968, the Kains gave Pima County a five year license to use land they owned in Pima County "for the purpose of disposing of refuse, garbage, trash, and waste materials." The County promised to operate this "sanitary land fill" "in accordance with all rules and regulations of the Arizona State Department of Health and in a sanitary manner." When it discontinued use, the County was to "cover or dispose of all exposed garbage, trash, refuse, and waste material."
 
 
 5
 The Kains' son inherited the land in 1979. He had visited it many times since 1942. The County closed the landfill in 1970. The Kains' son, in an affidavit, stated that "the entire area in which wastes were placed was covered in a manner which I believed was satisfactory." His parents lived near the landfill then, and were also "satisfied with the manner in which the County operated and closed the landfill."
 
 
 6
 Mr. Kain sold the land in 1983. He told the buyer "that a substantial portion of the Property had been used by Pima County as a sanitary landfill." The buyer, in order to negotiate a lower price, showed him what it was going to cost to remove debris or deal with methane problems if the fill remained on site. The soil boring reports obtained by the buyer showed that much of the fill consisted of "rock, wood, bottles, tires, cans, some soil, 0% usable."
 
 
 7
 The buyer paid $1,150,000 to Mr. Kain, and then sold the land immediately for $1,041,000. This sale was a transfer of interests among people associated with a principal for both the first buyer and the second. The buyer's own expert's feasibility report discussed the anticipated expenses associated with the "landfill problem." Some sort of barrier and drain system for methane gas was contemplated, so that the land could be used as a trailer park. Five years later, the buyer added a new investor, and became La Cholla Curtis Limited Partnership, the plaintiff in the case at bar.
 
 
 8
 The trailer park never worked out. In 1988, La Cholla Curtis tried to sell the land to the County for use as a riverside park. The County decided against buying the land. Among its concerns were that the land was too bare to be a good park, pits from sand and gravel extraction during the years after the dump was closed would have to be filled, and the land might "possibly contain hazardous materials" because it had been used as a "sanitary landfill."
 
 
 9
 La Cholla's lawyers sent the County a letter dated February 16, 1989. The letter said that La Cholla was holding the County responsible for environmental response costs, and intended to sue the County to recover the costs, unless the County cleaned up the site. In the course of the lawsuit, La Cholla developed evidence that the property now has no market value whatsoever, because of hazardous substances in the soil left there from when it was a dump. Because the case was dismissed on summary judgment, we assume for purposes of review that this is correct, so the developers are now stuck with a worthless piece of land for which they paid over $1 million in the 1980's.
 
 
 10
 The complaint in this case, which was filed December 13, 1990, claims response costs under CERCLA, 42 U.S.C. Sec. 9607, and makes claims based on state law for inverse condemnation under the Arizona Constitution, negligence in operating the landfill, nuisance, and strict liability. All the claims are for harm to the land during the 1968-74 period when the Kains licensed the County to use it as a "sanitary landfill."
 
 
 11
 The CERCLA claim has been settled. Nothing is before us except the state law claims.
 
 
 12
 Analysis.
 
 
 13
 We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Although the district court reached the merits and dismissed for failure to establish a genuine issue of fact, we affirm on other grounds, as we are free to do. Jewel Cos. v. Pay Less Drug Stores N.W., Inc., 741 F.2d 1555, 1564-65 (9th Cir.1984). We affirm because the claims were barred by limitations.
 
 
 14
 1. Inverse Condemnation.
 
 
 15
 We assume for purposes of discussion without deciding that plaintiffs had evidence sufficient to establish a genuine issue of fact on their inverse condemnation claim. Article 2, Section 17 of the Arizona Constitution provides that "[n]o private property shall be taken or damaged for public or private use without just compensation having first been made." Ariz. Const. Art. 2, Sec. 17 (emphasis added). See also Arizona v. Leeson, 323 P.2d 692 (Ariz.1958) (unplanned flooding caused by a highway); Reinking v. County of Orange, 88 Cal.Rptr. 695, 699 (Cal.App.1970) (damage from dump exceeding what was reasonably foreseeable actionable as inverse condemnation). We also assume without deciding that a lessor or licensor, and a subsequent owner, can bring a lessor's or licensor's claim for inverse condemnation arising out of waste during the period of the lease or license. But see Steinle v. City of Cincinnati, 53 N.E.2d 800, 803 (Ohio 1944); Florek v. Pennsylvania, 493 A.2d 133, 136 (Pa.Commw.1985).
 
 
 16
 Arizona uses its ten year adverse possession statute of limitations for inverse condemnation claims. Ariz.Rev.Stat. Sec. 12-526; Maricopa County Municipal Water Conservation District No. 1 v. Warford, 206 P.2d 1168, 1173 (Ariz.1949). An inverse condemnation claim is a claim that the government took property without paying the owner just compensation. The cause of action for inverse condemnation would have to accrue at the time of the taking. That could be no later than the end of the license, 1973.
 
 
 17
 We reject La Cholla's argument that the running of the statute should be tolled until La Cholla's discovery of the hazardous substance contamination. We do not believe that Arizona would toll this ten year statute. One reason is that the statute is designed to limit actions for open, notorious adverse possession of land. The requirement of open and notorious adverse possession implies that the conduct giving rise to the cause of action is inherently discoverable. A second reason is that we cannot see why the legislature would want to give people who know of a claim they have for adverse possession ten years to file it after they had discovered it, when they have much shorter periods for other types of claims. A more sensible construction is that the lengthy period is intended to allow ample time for discovery.
 
 
 18
 The County quit using the land as a dump in 1970, so by 1980 no hazardous materials would have been placed there for ten years. Arguably, the cause of action did not accrue until the license ended and the County completed its cleanup activities in 1973 or 1974. If so, the cause of action was barred in 1983 or 1984. The present lawsuit was filed December 13, 1990. We see no way that the date of accrual of the cause of action could fall within the ten year period prior to filing.
 
 
 19
 2. Negligence Per Se and Strict Liability.
 
 
 20
 The negligence per se and strict liability claims are also barred by limitations. Arizona requires negligence per se claims to be filed within one year, and strict liability claims within two years of when they accrue. See Ariz.Rev.Stat. Sec. 12-541(3); Ariz.Rev.Stat. Sec. 12-542. The theory of these claims is that the County violated the standard of care established by law toward the landowner, and engaged in an abnormally dangerous activity by operating a landfill. The evidence is uncontradicted that these activities ended in 1970. We assume that Arizona would allow these torts to be tolled until the tort was known or discoverable to the victim. See Kenyon v. Hammer, 688 P.2d 961, 968 n. 6 (1984).
 
 
 21
 But the facts of the case at bar preclude tolling. The Kains licensed the County to operate a dump on their land, so they certainly knew people were dumping rubbish there. Nothing prevented the Kains from seeing how the dump was being operated and what sorts of things people were dumping. Moreover, although the plaintiffs have presented us with a number of arguments intended to establish that violation by the county of its agreement with the Kains led to the contamination of the land, they have not succeeded in raising a genuine issue of material fact on this point. As a result, the plaintiffs' reliance on the terms of the agreement does not justify tolling. For these reasons, limitations bars the claims.
 
 
 22
 3. Nuisance.
 
 
 23
 We assume for purposes of discussion, without deciding, that the nuisance claim is not barred by limitations, on the theory that so long as the hazardous substances remained, the nuisance continued. The district court properly dismissed it because the plaintiffs did not submit evidence which would establish a prima facie case of nuisance.
 
 
 24
 Nuisance is a nontrespassory "invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts, Sec. 821D. For purposes of nuisance analysis, the landowner in this case is not "another" and there was no "invasion." La Cholla stepped into the Kains' shoes as owner of the land. The Kains' licensed use of the land as a dump, so as to the Kains, the County's use was permissive, not invasive. The duty enforced by nuisance actions is to neighboring land, so the tort action is not available to the buyer of the land which itself contains or emits the offending substance. Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303, 313-14 (3d Cir.1985).
 
 
 25
 AFFIRMED.
 
 
 26
 REINHARDT, Circuit Judge, concurring specially.
 
 
 27
 I fully concur in the court's disposition except with respect to its discussion of the negligence per se and strict liability claims. Although the disposition states that the two claims are barred by the applicable statutes of limitations, it proceeds to address the merits of whether the county can be held liable. I would not do so. Rather, I would reject these claims solely on limitations grounds.
 
 
 28
 With respect to the limitations question, I would add one point to the discussion in the court's disposition. I would note that, although the plaintiffs have presented us with a number of arguments intended to establish that violations by the county of its agreement with the Kains led to the contamination of the land, they have not succeeded in raising a genuine issue of material fact in this respect. I would then conclude that the plaintiffs' reliance on the terms of the agreement does not justify tolling the applicable statutes of limitations.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3