**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MARY JANE JASIN; THOMAS JASIN,

Plaintiffs-Appellants,

v.

VIVUS, INC.; LELAND F. WILSON;
TIMOTHY MORRIS; PETER Y. TAM,

Defendants-Appellees.

No.   16-15893

D.C. No. 5:14-cv-03263-BLF

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted November 13, 2017
San Francisco, California

Before:  GOULD and MURGUIA, Circuit Judges, and GRITZNER,** District
Judge.

Mary Jane and Thomas Jasin appeal the district court's dismissal of their

state and federal claims.  We affirm.

From 2012 to 2013, the Jasins invested heavily in shares of Vivus, Inc., a

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable James E. Gritzner, United States District Judge for the
Southern District of Iowa, sitting by designation.

drug developer. After the European Medical Agency's Committee for Medicinal Products for Human Use ("CHMP") denied an application to market Vivus's new weight-loss drug, Vivus's stock price dropped and the Jasins allegedly took a $2.8 million loss. The Jasins filed a securities fraud suit in state court, but thereafter agreed to dismiss the case with prejudice on the Jasins' motion in favor of a federal action. The Jasins later amended their federal court complaint to add state-law claims that had not been included in the prior dismissed state-court action. The district court dismissed the Jasins' state-law claims as barred by res judicata and dismissed their federal securities fraud claims for failure to state a claim. We agree with the district court on both counts.

The Jasins' state-law claims that were newly asserted in this federal case are barred by res judicata. The Jasins do not dispute that under California law, all three elements of res judicata are satisfied here. *See Fed. Home Loan Bank v. Countrywide Fin. Corp.*, 154 Cal. Rptr. 3d 873, 878 (Cal. Ct. App. 2013). Instead, the Jasins contend that the district court misapplied California law in construing their dismissal agreement, which they now argue implicitly waived res judicata. The parties' agreement in the circumstances here was not controlling on the preclusive effects of the state court's dismissal with prejudice. The record does not suggest that the parties "needed court approval of the settlement," *Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 428 (Cal. Ct. App. 2010), that the

2

dismissal involved a "stipulated judgment," *Ellena v. State*, 69 Cal. App. 3d 245, 250 (Cal. Ct. App. 1977), or otherwise that "the stipulation [was] a part of the decision" such that "it is impossible to construe the effect of the decision without considering the effect of the stipulation," *Miller & Lux v. James*, 179 P. 174, 178 (Cal. 1919). In any event, the Jasins represented explicitly to the district court that a dismissal agreement's waiver of res judicata must be "express," but they now argue on appeal that the court should not have applied that standard. The Jasins may not complain on appeal of purported errors below for which they are responsible. *See Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336 (9th Cir. 1985).

The Jasins' federal securities fraud claims were also properly dismissed. The Jasins primarily take issue with four instances of allegedly fraudulent statements on appeal.[1] None of these statements amounted to a material misrepresentation or omission. "[S]ection 10(b) and Rule 10b-5 prohibit only misleading and untrue statements, not statements that are incomplete." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012). Vivus "was not obligated to disclose each and every step it took when interacting with regulators." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 800 (9th Cir. 2017). And

---

[1] We decline to assess the adequacy of statements included in the background section of the Jasins' briefs but not referred to in their arguments. *See* Fed. R. App. P. 28(a)(8)(A).

3

these statements fall far short of the heightened pleading requirements for scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009).

First, the Jasins complain that Vivus stated that "[t]he 120-day questions are consistent with the issues previously raised in the FDA review process." That statement was accurate. The issues raised by the FDA and CHMP were similar, though the FDA was ultimately satisfied with Vivus's plan to conduct a post-approval study while the CHMP was not.

Second, the statement that Vivus "never talked about a preapproval cardiovascular safety study" with the FDA was not improper. The Jasins argue that this statement was not inherently dishonest but "became misleading" when paired with the statement above, which Vivus issued months earlier. We disagree. As Vivus repeatedly warned, there was no guarantee that the CHMP would handle its cardiovascular concerns in the same way that the FDA had handled them.

Third, Vivus's disclosure made on three occasions that the CHMP "may" require a pre-approval cardiovascular study was not misleading or false. It was possible, but not guaranteed, that such a study would be needed until the CHMP issued its decision requiring the study in October 2012. The 80-day report showed that the Rapporteur and Co-Rapporteur disagreed about whether a cardiovascular study would be needed. Their joint 120-day report said the issue precluded

4

approval "at the present time" and "need[ed] to be further discussed," but their next report said merely that the lack of a study "should be further justified." In any event, the Rapporteur and Co-Rapporteur spoke for only two of the CHMP's 29 voting members, and the CHMP required a pre-approval study by a divided vote of 19 to 10.

Fourth, the statements that there was "nothing new to report" and that the drug "was looking real good for approval" are also unobjectionable. The Jasins do not argue that there might have been something "new to report" at that time. And the generic statement that the chances of approval were "looking good" falls in the category of "mildly optimistic, subjective assessment[s]" that are insufficient for a securities fraud claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

**AFFIRMED.**